```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

PAMELA M. BROWN,

                 Plaintiff,         1:17-cv-00104-MAT
      -v-                           DECISION AND ORDER

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security,

                 Defendant.
_____
```

## INTRODUCTION

Pamela M. Brown ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On January 14, 2011, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of January 1, 2009, due to: degenerative bone disease; arthritis; pinched nerves in her head, neck, and arms; and carpal tunnel syndrome. Administrative

Transcript ("T.") 201-09. The claims were initially denied on April 18, 2011. T. 93-98. At Plaintiff's request, a hearing was conducted on July 13, 2012, in Buffalo, New York by administrative law judge ("ALJ") William M. Weir III, with Plaintiff appearing with her attorney. A vocational expert ("VE") also testified. T. 366-96.

The ALJ issued an unfavorable decision on December 26, 2012. T. 73-87. Plaintiff appealed the decision to the Appeals Council ("AC"), which vacated the decision and remanded the claim for further proceedings on June 25, 2014. T. 88-91. On October 17, 2014, Plaintiff appeared with her attorney at a second hearing and testified again before ALJ Weir. Vocational expert Rachel A. Duchon and medical expert Arthur W. Lorber, M.D. also testified. T. 30-63. On May 29, 2015, ALJ Weir issued an unfavorable decision. T. 12-29. Plaintiff again appealed the decision to the AC, which denied Plaintiff's request for review on December 9, 2016, making the ALJ's decision the final decision of the Commissioner. T. 1-6. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2013. T. 17.

2

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. *Id*.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: status post-ankle injury; high arches; post-traumatic arthritis; status post-carpal tunnel release surgery; and obesity. T. 17. The ALJ also noted Plaintiff had been diagnosed with fibromyalgia. However, the ALJ found that because Plaintiff's pain management physician had diagnosed Plaintiff with both osteoarthritis and fibromyalgia, based on the same symptoms, and, according to the testimony of the medical expert, Dr. Lorber, fibromyalgia is a diagnosis of exclusion, the diagnosis of fibromyalgia could not stand. Accordingly, the ALJ found the Plaintiff's fibromyalgia was not a medically determinable impairment. T. 17-18.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 198.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: she is able to lift and carry twenty pounds occasionally and ten pounds

3

frequently; she is able to stoop, crouch, climb ramps and stairs and kneel occasionally; she is able to stand or walk four hours in an eight-hour day, but not more than one hour at a time; she is able to sit for six hours in an eight-hour day, but not more than one hour at a time; and she is able to use her right (non-dominant) hand frequently, but not constantly. T. 19.

At step four, the ALJ concluded that Plaintiff was able to perform her past relevant work as a secretary. T. 23. At step five, the ALJ relied on the VE's testimony to find that in addition to Plaintiff's past relevant work, there are additional unskilled jobs existing in the national economy Plaintiff is also able to perform, including the representative occupations of office helper and mail room clerk. T. 24. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. *Id*.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

4

conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ erred in failing to find fibromyalgia to be a severe impairment at step two of the analysis; and (2) the ALJ erred in failing to do a full and proper credibility assessment of Plaintiff. For the reasons discussed below, the Court finds Plaintiff's arguments without merit and affirms the Commissioner's final determination.

**I. The ALJ did not Err at Step Two**

Plaintiff's first argument is that the ALJ erred when he failed to find Plaintiff's medically determinable impairment of fibromyalgia to be a severe impairment. For the reasons set forth below, the Court disagrees.

5

Plaintiff was examined by Dr. Anupa Seth at UMMC Pain Center on January 20, 2014. Plaintiff reported that her primary care doctor had suggested pain management because there was nothing more he could do for her. T. 344. Plaintiff complained of a lot of pain all over her body and reported a history of osteoarthritis, among other ailments. *Id*. Specifically, Plaintiff complained of pain in her elbows, knees, lower back and neck. She described the pain as sharp and shooting in character, and sometimes dull and achy. She reported the pain was worse with any physical activity, such as sitting, bending, twisting, and turning. T. 346. Upon examination, Dr. Seth noted Plaintiff appeared comfortable, but had difficulty getting on and off the examination table and rising from her chair. *Id*. Dr. Seth noted significant tenderness in the knee joints, with the range of motion of the knee joints limited in flexion and extension. Diffuse bilateral tenderness was also noted in the paraspinal muscles of the cervical, thoracic, lumbar spine, greater trochanter, knee joints, and elbow joints. T. 347. Dr. Seth's assessment indicated Plaintiff had fibromyalgia and osteoarthritis and noted Plaintiff would benefit from aquatic therapy. T. 348. She prescribed Cymbalta 30-60 mg daily for one week to diffuse Plaintiff's myofascial pain. She recommended Plaintiff follow up with an orthopedic specialist for her ongoing knee pain. *Id.* The record contains no additional reports or treatment notes from Dr. Seth's office. Furthermore, the record does not indicate, nor

does Plaintiff suggest, any other medical professional diagnosed Plaintiff with fibromyalgia.

At the hearing, medical expert Dr. Lorber testified that fibromyalgia is a diagnosis of exclusion only. He further testified that making a diagnosis of osteoarthritis and fibromyalgia at the same time, as Dr. Seth had done, is "an oxymoron." T. 41. The two, he testified, cannot be diagnosed simultaneously. Rather, a diagnosis of fibromyalgia comes after other conditions have been ruled out as a cause of the relevant symptoms. Furthermore, Dr. Lorber noted, Dr. Seth's notes described Plaintiff's pain as diffuse and did not specify any trigger points. Diffuse discomfort, Dr. Lorber testified, is not fibromyalgia. *Id*. Finally, based upon his review of the entire medical record and his conversation with Plaintiff at the hearing, Dr. Lorber opined Plaintiff did not have fibromyalgia. *Id*.

In his decision, the ALJ found that the diagnosis of fibromyalgia could not stand because Dr. Seth had simultaneously diagnosed Plaintiff with osteoarthritis, rather than eliminating it as the cause of Plaintiff's pain. T. 18. Plaintiff argues that in making this determination, the ALJ ignored Plaintiff's medical record and instead relied exclusively on Dr. Lorber's opinion. As discussed below, the Court finds this argument lacks merit.

In claims involving fibromyalgia, the Social Security Administration ("SSA") has provided guidance on how evidence must

7

be developed and evaluated in Social Security Ruling ("SSR") 12-2p. SSR 12-2p provides two avenues by which fibromyalgia can be found to be a medically determinable impairment. The first requires that claimant: (1) has a history of widespread pain; (2) has at least 11 (of 18) positive tender points on physical examination, bilaterally and both above and below the waist; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. If a claimant cannot meet the requirements set forth by the first set of criteria, fibromyalgia may still be found to be a medically determinable impairment when the claimant has: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrom; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms were excluded. SSR 12-2p, 2012 WL 3104869 at *2-3.

In both sets of criteria, SSA requires that a claimant present evidence that other disorders which could cause the symptoms associated with fibromyalgia have already been excluded. In this case, Dr. Seth simultaneously diagnosed Plaintiff with fibromyalgia and osteoarthritis based on a one-time examination of Plaintiff and Plaintiff's self-reported medical history. No diagnostic tests were performed or reviewed by Dr. Seth prior to making the diagnoses.

*See* T. 344-48. At the hearing, medical expert Dr. Lorber testified that a claimant "cannot have both diagnoses [of osteoarthritis and fibromyalgia] simultaneously." T. 41.

Plaintiff argues Dr. Lorber's testimony is outright incorrect, citing evidence outside the record that both diagnoses can in fact coexist. However, upon review of the medical record and hearing testimony, the Court finds that Plaintiff is basing this argument on a misunderstanding of the record. First, Dr. Lorber did not testify that an individual cannot have both fibromyalgia and osteoarthritis. Instead, he testified that an individual cannot receive the diagnoses simultaneously. *See* T. 41. While seemingly minor, the difference between the two statements is in fact significant. Dr. Lorber's testimony is fully consistent with fibromyalgia's status as a diagnosis of exclusion, which by definition means the same symptoms cannot be attributed to both fibromyalgia and another, simultaneous diagnosis.

Plaintiff also attempts to discredit Dr. Lorber based on a misstatement, wherein Dr. Lorber referred to Dr. Seth as a rheumatologist, rather than a pain management physician (*see id.*). This misstatement by Dr. Lorber was, at most, harmless error. Dr. Lorber did not suggest that his testimony was in any way influenced by Dr. Seth's specialty, nor has Plaintiff presented any evidence that would support such a conclusion. *Cf. House v. Comm'r of Soc. Sec.*, No. 7:15-CV-1064 (LEK), 2016 WL 4275732, at *7

9

(N.D.N.Y. Aug. 12, 2016) (ALJ's mistaken reference to examination by a rheumatologist was harmless, "because the determination that [plaintiff's] fibromyalgia was not medically determinable [was] dependant upon the medical evidence required by SSR 12-2p, not just on the diagnoses of her treating physicians").

Plaintiff further makes a cursory suggestions that the ALJ was required to further develop the record regarding Plaintiff's fibromyalgia diagnosis by recontacting her treating physicians. This argument lacks merit. The record in this case was fully adequate to permit the ALJ to make a reasoned RFC assessment. *See Miller v. Colvin,* No. 6:15-CV-0552 (GTS), 2016 WL 4402035, at *7 (N.D.N.Y. Aug. 18, 2016) (ALJ was not required to recontact plaintiff's treating physician regarding fibromyalgia diagnosis where evidence did not contain obvious gaps); *Williams v. Astrue*, No. 10-CV-499S, 2012 WL 1114052, at *3 (W.D.N.Y. Mar. 30, 2012) (ALJ is not required to recontact treating physicians where the record contains sufficient evidence to evaluate the opinions of record and make a disability determination). Accordingly, the Court finds the ALJ was under no obligation in this case to further develop the record.

The ALJ in this case properly relied on Dr. Lorber's testimony, as well as the criteria set forth in SSR 12-2p, to determine that Plaintiff did not have a medically determinable impairment of fibromyalgia. *See Warthan v. Comm'r of Soc. Sec.,*

No. 7:16-CV-0036 (GTS), 2017 WL 79975, at *6 (N.D.N.Y. Jan. 9, 2017) (finding that "[p]laintiff failed to proffer sufficient evidence demonstrating that her fibromyalgia [was] a medically determinable impairment" where physician who diagnosed it based their conclusion only on plaintiff's complaints of pain and did not find any positive trigger points); *Miller,* 2016 WL 4402035, at *7 (ALJ properly found that fibromyalgia was not a medically determinable impairment where "none of the records from Plaintiff's diagnosing physician provide the basis for her diagnosis" and "the record as a whole [does not] suggest that Plaintiff's symptoms would meet either of the two sets of diagnostic criteria [contained in SSR 12-2p]"). Accordingly, the Court finds no error at step two.

**II. The ALJ's Credibility Finding was Proper**

Plaintiff's second and final argument is that the ALJ's reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms less than fully credible were based on a misreading of the record. Specifically, Plaintiff contends the ALJ erred in his: (1) assessment of the objective findings of record; (2) analysis of Plaintiff's activities of daily living; and (3) analysis of Plaintiff's failure to pursue treatment.

An ALJ's credibility assessment is entitled to deference. "Because the ALJ has the benefit of directly observing a claimant's

demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No. 12-CV-6308 (MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). Furthermore, an ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). In this case, for the reasons set forth below, the Court finds that the ALJ's credibility assessment was adequately supported by the evidence of record.

**A. The ALJ Properly Considered Plaintiff's Lack of Severe Objective Findings**

Plaintiff first argues that the ALJ's failure to consider her fibromyalgia as a severe impairment undercut his conclusion that Plaintiff's credibility was damaged by the lack of severe objective findings. However, the Court has concluded, for the reasons set forth in detail above, that the ALJ correctly found Plaintiff did not have the medically determinable impairment of fibromyalgia. Accordingly, this argument is without merit.

**B. The ALJ Properly Assessed Plaintiff's Activities of Daily Living**

Plaintiff further argues the ALJ improperly discredited her complaints of pain based on her daily activities. Specifically,

Plaintiff contends that the ALJ mischaracterized her reported daily activities to infer she was capable of standing and/or walking for a total of four hours in an eight-hour workday. However, contrary to Plaintiff's argument, in the context of his decision, the ALJ did not find that Plaintiff's activities of daily living undercut her pain complaints. Instead, the ALJ found that Plaintiff's reported activities of daily living, including her ability to make her bed, dust, and go to the grocery store, are consistent with the RFC finding that Plaintiff is able to stand and/or walk for up to an hour at a time, for a total of four hours in an eight-hour workday. T. 22. The ALJ accurately summarized Plaintiff's statement regarding her abilities, and his conclusions based thereon were reasonable.

Moreover, even accepting Plaintiff's argument that the ALJ relied on Plaintiff's reported activities of daily living to find her statements regarding the limiting effects of her symptoms less than fully credible, the Court finds no error in the ALJ's assessment. *See Pennock v. Comm'r of Soc. Sec.*, 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016) (When making a credibility determination, "[a]n ALJ is entitled to take a plaintiff's activities of daily living into account..."); *Rusin v. Berryhill*, 726 F. App'x 837, 840-41 (2d Cir. 2018) (An ALJ is entitled to consider inconsistencies between a

claimant's allegations of disability and her activities of daily living, and is not required to accept her subjective complaints of pain without question.). In this case, as the ALJ noted, Plaintiff's statements regarding her activities of daily living were inconsistent with the otherwise severe limitations she claimed to have. Accordingly, the Court finds the ALJ properly assessed Plaintiff's activities of daily living.

**C. The ALJ Properly Assessed Plaintiff's Failure to Seek Treatment**

Finally, Plaintiff contends the ALJ failed to follow the appropriate process for evaluating Plaintiff's noncompliance with treatment, as it pertained to Plaintiff's credibility. This argument too is unavailing, for the reasons set forth below.

For the purposes of judging credibility, "a longitudinal medical record demonstrating [a claimant's] attempts to seek medical treatment . . . and to follow that treatment once it is prescribed lends support to [a claimant's] allegations of intense and persistent pain or other symptoms..." SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996)[1]. Conversely, a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the

---

[1] SSR 96-7p was superseded by SSR 16-3p, effective March 28, 2016; however SSR 96-7p was the ruling in place at the time the ALJ issued his decision in 2015 and thus, is the applicable ruling.

treatment as proscribed." *Id.* However, before drawing an adverse inference from a claimant's failure to seek or follow through with treatment, the ALJ must first consider any explanations the claimant provides, or other information in the record that may explain the failure to seek treatment. *Weed Covey v. Colvin*, 96 F.Supp.3d 14, 33 (W.D.N.Y. 2015) (internal quotation omitted).

In this case, the ALJ noted Plaintiff's treatment record is sparse considering the number of alleged severe conditions and the magnitude of her symptoms. T. 22. Throughout her hearing testimony, Plaintiff offered several explanations pertaining to the lack of treatment she had received. Plaintiff testified that doctors have told her that her back and hip issues are caused by arthritis and to "deal with it." She further testified she has received no treatment for her back and hips because "nothing is offered." T. 47. Plaintiff testified she went for water therapy once but the therapist injured her neck and her torn right rotator cuff, so she stopped. *Id*. She further testified that she had received no treatment for her rotator cuff because although her doctor had offered surgery, the doctor told her "I wouldn't do it because it's going to fill in with arthritis and you're probably going to be worse off in a year than what you are now." T. 48. Plaintiff also testified that she received a sample pack of an anticonvulsive medicine from her pain management doctor, but it made her nauseated. When she told the doctor about the nausea, the doctor

15

said that she could not walk around being sick to her stomach all the time. T. 49. Finally, Plaintiff testified she received a letter indicating that the pain management doctor she saw was no longer with the practice. T. 57.

Plaintiff argues that the ALJ failed to satisfy the requirement that he consider the reasons for her lack of medical treatment. The Court disagrees. In his decision, the ALJ noted Plaintiff's lack of follow-through with physical therapy, pain management, and rheumatology. T. 22. He also noted the sparsity of diagnostic studies, finding the absence of medical treatment eroded Plaintiff's credibility with regard to the severity of her symptoms, as well as the significance of the limitations she was alleging. *Id*. While the ALJ did not provide a specific analysis of each excuse Plaintiff provided in her testimony, his decision makes it clear that he did not regard her explanations as credible, in light of the significance of the limitations she was claiming. An ALJ is not required to explicitly state every reason for his conclusions, "as long as the decision substantively applies the regulations." *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 490 (S.D.N.Y. 2018). Accordingly, the Court finds the ALJ provided an adequate explanation as to why he found Plaintiff's lack of medical treatment negatively impacted her credibility.

16

For the reasons set forth above, the Court finds no error in the ALJ's finding that Plaintiff was less than fully credible. The Court accordingly finds that remand is not warranted on this basis.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 15) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   August 20, 2018
         Rochester, New York